UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE

DEBORAH STOKES,

    Debtor.                                                                Case No. 05-16264

ROBIN BLACKBURN, Individually and
d/b/a BLACKBURN PAINTING and f/d/b/a
BLACKBURN PAINTING PLUS,

    Plaintiff,

v.                                                                                         Adv. No. 06-01065

DEBORAH STOKES,

    Defendant.

**ORDER DISMISSING DISCHARGEABILITY ACTION
AND DECLARING DEBT DISCHARGEABLE**

William L. Howell, attorney for plaintiff, Mobile, Alabama
J. Gullatte Hunter, III, attorney for defendant, Mobile, Alabama

This matter came before the court on the plaintiff's complaint objecting to the dischargeability of her claim under sections 523(a)(2), (4) and (6) of the Bankruptcy Code. The court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding under 28 U.S.C. § 157(b)(2) and the court has the authority to enter a final order. For the reasons discussed below, the court finds that the action against the debtor must be dismissed and finds that the debt is dischargeable as to the debtor.

## FACTS

The defendant, Deborah Stokes, is the president, founder, and pastor of Alpha & Omega Christian School, a non-profit corporation incorporated in 1999. Stokes formerly operated the school at 2420 Shelton Beach Road in Eight Mile, Alabama, in a building owned by a local church. The school building was damaged as a result of Hurricane Dennis and needed repair. Stokes contacted her cousin, plaintiff Robin Blackburn, about doing some of the work.

Blackburn, who has worked in the construction business all of her adult life, is an experienced commercial and residential painter. She has performed painting jobs for several successful, stable area businesses. Blackburn also performs other construction related skills such as hanging sheetrock. Blackburn is self-employed, and runs her businesses through sole-proprietorships known as Blackburn Painting, Blackburn Painting Plus, and Blackburn Construction.

On July 12, 2005, Robin Blackburn d/b/a Blackburn Painting Plus submitted a written proposal to Alpha & Omega Christian School to perform some of the repairs, including painting, removing and replacing damaged ceiling tiles, and covering all mold, mildew, and water stains for the sum of $7,750.00. This proposal, which stated that the work would be "completed in a substantial workmanlike manner," was accepted and signed by Deborah Stokes on the same day. Blackburn testified that Stokes assured her she would be paid upon Stokes' receipt of an insurance check from Hartford Insurance Company to cover the repair work. Blackburn testified she would not have agreed to perform the work without Stokes' assurance of payment upon receipt of the insurance check. As evidence of the assurance by Stokes, Blackburn submitted into evidence a fax from Hartford Insurance to Stokes, dated July 14, 2005, which stated that

Stokes' "business policy . . . does cover hurricane/wind damage to covered property. Please advise . . . Blackburn Construction that they may resume work at your premises."

According to testimony, Hartford was supposed to issue the insurance check payable to Alpha & Omega and Blackburn jointly, so that both signatures would be needed to cash the check. However, Hartford apparently omitted Blackburn's name from the check, issuing the check in the school's name only. This allowed Stokes to deposit the check into the school's bank account without Blackburn's knowledge or signature.

On July 18, 2005, Blackburn d/b/a Blackburn Painting submitted an invoice to Alpha & Omega Christian School stating that all the proposed work had been performed, except for replacing a small section of damaged carpet, which the invoice indicates the school or Stokes decided not to replace. The invoice indicates Blackburn was paid $2,000.00 with a balance due of $5,750.00. Blackburn also wrote on the invoice that Stokes said "she didn't recieve [sic] check from ins[urance]." Blackburn testified the work had already been completed at this time, including additional work she performed without any extra charge.

On August 24, 2005, a receipt from Alpha & Omega Christian indicating that a $2,000.00 cash payment was made to Blackburn Painting, was drawn up by Stokes' secretary and signed by Blackburn. This receipt, given to Blackburn, noted that the $2,000.00 was a "draw" from the total contract price. Contrary to Blackburn's testimony, Stokes testified that the work had not been completed at that time and that was why a partial payment was given and the word "draw" was included on the receipt.[1]

---

[1] Only $2,000.00 was ever paid from Stokes to Blackburn. The receipt and the indication of payment on Blackburn's invoice are two different indications of the same $2,000.00 payment.

-3-

Blackburn testified she and her crew performed all the work they contracted to do, except replacing a small section of carpet. Blackburn testified the only reason she did not replace the carpet was because Stokes told her not to replace it because the water stain was no longer noticeable. Blackburn stated all the work was done in a professional workmanlike manner. Blackburn claims Stokes still owes her $5,750.00, which should have been paid with the insurance check Stokes received from Hartford Insurance. Blackburn alleges that Stokes, despite assuring Blackburn she would be paid from the insurance check proceeds, received the insurance check and failed to pay her. Additionally, Blackburn alleges that Stokes never intended to pay her from the insurance proceeds but only told Blackburn that to get her to perform the work. Stokes acknowledges receiving an insurance check from Hartford, in the school's name, and depositing the check into the school's bank account without paying Blackburn anything besides the $2,000.00 evidenced by the receipt. However, Stokes testified Blackburn did not complete the work in a "substantial workmanlike manner" and thus was not entitled to any additional payment.

On October 12, 2005, Stokes filed a no-asset Chapter 7 bankruptcy. She did not list Blackburn as a creditor on her original petition, but amended her schedules on February 1, 2006, to include Blackburn Construction. Because Blackburn Construction had just been added as a creditor in the case, it was given an extended deadline of April 3, 2006, to file objections to discharge and/or dischargeability. On February 17, 2006, Blackburn filed this adversary complaint objecting to the discharge of Blackburn's claim, under §§ 523(a)(2), (4) and (6). Blackburn alleges Stokes defrauded her out of the $5,750.00 she is still owed from the work she performed at the school.

-4-

Stokes argues that she does not owe Blackburn any money because Blackburn did not complete the work in a "substantial workmanlike manner," as required by the contract and because the contract was not between Blackburn and Stokes, but between Blackburn and the school, which is incorporated. Therefore, Stokes argues she was not a party to the contract and cannot be held liable individually for any debt of the school corporation.

Stokes testified that the work performed by Blackburn and her crew was sloppy and incomplete. Stokes submitted 19 pictures into evidence which she testified she took the day before the trial. These pictures show numerous water stains on the ceilings, sloppy painting including smudges, smears, and paint on the ceilings, and pealing, unscraped areas. Stokes testified that these pictures accurately portray the condition of the building after Blackburn and her crew finished their work. Blackburn testified that the pictures showed the interior of the school in the condition it was in before she began her work and that the pictures could not have been taken the day before trial. Blackburn testified the school was in a much better condition after she completed her work.

In addition to the parties' contradictory testimony, the court heard testimony from Reverend Mathew Orvis, the pastor of the church that owned the building the school used. Revered Orvis testified that he observed Blackburn and her crew working on the building. Because the church owned the property, Reverend Orvis testified he made sure the work was performed satisfactorily and proper. Reverend Orvis testified there could have been some additional touch-up painting done around the trim, but he testified he was pleased overall with the work performed by Blackburn and her crew. Reverend Orvis also testified that the school was not in the condition shown in Stokes' pictures after Blackburn had finished.

-5-

Case 05-16264   Doc 17   Filed 08/11/06   Entered 08/11/06 15:37:17   Desc Main
Document     Page 5 of 12

Also testifying at the trial was Billy Maddux, a painter formerly on Blackburn's crew, who worked for Blackburn on the school painting job. He testified the school's interior was "a mess" when he started on the project and to his knowledge the mess had been caused by Stokes' employees. Maddux testified that the work he did and the work done by Blackburn, and the rest of Blackburn's crew was done "the right way" and was professional. Maddux agreed that the pictures produced by Stokes showed painting that was not very workmanlike, but testified that the photos did not depict how the school looked after Blackburn's crew had finished their work.

At the close of Blackburn's case in chief, Stokes moved for dismissal of plaintiff's complaint under Rule 41 of the Federal Rules of Civil Procedure (Fed.R.Bankr.P. 7041) for failure to meet the burden of proof on each count.[2] The court took this motion under advisement. At the conclusion of all evidence, Stokes renewed her motion, which the court again took under advisement.

## LAW

Blackburn alleges Stokes is liable to her for the $5,750.00 due for the work performed at the school and that the debt should be excepted from discharge under §§ 523(a)(2), (4) and/or (6). However, before these exceptions to discharge are reached, the court must first determine if Blackburn performed the work required under the contract in a "substantial workmanlike manner," which would entitle her to the unpaid balance of $5,750.00. If so, then the court must

---

[2] The Court treats Stokes' motion as a Rule 52 motion for judgment on partial findings, which is the appropriate motion to be made at the directed verdict stage of a nonjury trial. *See Green v. School Board of Hillsborough County, Fla.*, 25 F.3d 974, 977 n.1 (11th Cir. 1994) (Court noting that Rule 41(b) motion to dismiss should be treated as a Rule 52(c) motion); Fed. R. Civ. P. 41 and 52(a) Advisory Committee Comments. Fed. R. Civ. P. 52 is made applicable to adversary proceedings by Fed. R. Civ. P. 7052. This Order constitutes the findings of fact and conclusions of law required by Fed. R. Civ. P. 52(c).

decide if Stokes is personally liable for Blackburn's claim. If both questions are answered affirmatively the dischargeability exceptions come into play.

*Did Blackburn fulfill her contractual obligations?*

The two parties gave contrasting testimony concerning the work performed at the school. The defendant, Stokes, produced 19 pictures, allegedly taken the day before this trial, showing sloppy unprofessional workmanship at the school. Stokes testified the pictures clearly and accurately depict the condition of the school's interior after Blackburn completed her work. Blackburn testified that the pictures show the school's condition before she performed the work and the pictures could not have been taken after Blackburn had completed her work.

Besides the parties contradictory testimony, the court heard testimony from Reverend Orvis and Mr. Maddux which support Blackburn's position. Both testified that Blackburn satisfactorily performed the required work and that the pictures did not depict the condition of the school after Blackburn completed the work. The court observed all the witnesses as they testified and was able to judge the credibility of each. The court concludes that Reverend Orvis and Billy Maddux were especially believable. Accordingly, the court finds that Blackburn performed the work she contracted to do, in a substantial workmanlike manner, and that she is owed and entitled to the balance of $5,750.00 under the terms of contract she entered into with Alpha & Omega Christian School.

*Is Stokes personally liable for the $5,750.00 owed to Blackburn?*

It is uncontradicted that Alpha & Omega Christian School is a non-profit corporation. As such, the school, as a corporate entity, can enter into contracts as well as sue and be sued in its corporate name. Ala. Code § 10-3A-20. The school is its own legal entity, separate and distinct

Case 05-16264    Doc 17    Filed 08/11/06    Entered 08/11/06 15:37:17    Desc Main
Document      Page 7 of 12

from Stokes. The general rule is that an individual is not personally liable for a corporation's torts solely because of her position as an officer or director of a corporation. Ala. Code § 10-3A-41 ("The officers and employees of the corporation shall not, as such, be liable for obligations of the corporation."). However, if the corporate officer or director personally participates in the wrongful activities of a corporation, the individual as well as the corporation can be held liable. *Delong Equipment Co. v. Washington Mills Abrasive*, 840 F.2d 843, 851 (11th Cir. 1988). If Stokes personally participated in the wrongful activities, as Blackburn alleges, she could be held personally liable for the debt. Thus, if Blackburn meets her burden of proof under one of the alleged discharge exceptions, the debt could be determined to be nondischargeable against Stokes, individually.

*523(a)(2)*

Blackburn initially challenges the dischargeability of the $5750.00 debt pursuant to 11 U.S.C. § 523(a)(2)(A). The party objecting to the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed.R.Bankr.P. 4005. Objections to discharge are to be strictly construed against the creditor and liberally construed in favor of the debtor. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986).

Section 523(a)(2)(A) provides a Chapter 7 discharge does not discharge an individual debtor from a debt to the extent such debt is obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To establish fraud pursuant to § 523(a)(2)(A), courts have generally required a plaintiff to establish the traditional elements of common law fraud. A plaintiff must

prove the following elements: (1) the debtor made a false representation to deceive the creditor; (2) the creditor relied on the misrepresentation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result of the misrepresentation. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).

The cornerstone issue for this § 523(a)(2)(A) claim is whether the debtor committed fraud at the time she entered into the agreement with Blackburn for the repair work. *See Tip Top Tree Experts, LLC v. Corley (In re Corley)*, --- B.R. ---, 2006 WL 1313194, * 4 (Bankr. M.D. Fla. 2006) (Plaintiff failed to show that at the time debtors promised to pay creditor for storm damage to home with insurance proceeds, they had no intention of doing so, even though debtors received insurance check and ultimately spent money on other expenses). Blackburn argues that the debtor obtained her services by actual fraud because the debtor never intended to use the insurance funds to pay Blackburn. However, Blackburn has failed to meet her burden of proof on this threshold issue. Blackburn failed to show that Stokes did not intend to pay Blackburn at the time the parties entered into the agreement. To the contrary, the evidence shows that Stokes paid Blackburn $2,000.00 and gave Blackburn a receipt, on which it was noted that the payment was a "draw." This seems to indicate that Stokes, at least at that time, intended to pay Blackburn the remainder due under the agreement. Thus, Blackburn has not established that Stokes obtained Blackburn's services through false pretenses, false representation, or actual fraud. *Id.*

*523(a)(4)*

Blackburn next asserts that Stokes committed fiduciary fraud and/or defalcation under § 523(a)(4). Blackburn must prove two elements to sustain a § 523(a)(4) "fiduciary fraud or defalcation" claim. First, and most importantly, Blackburn must prove the existence of a

-9-

fiduciary relationship. Second, plaintiffs must prove that a fraud or defalcation occurred in the course of a fiduciary relationship. *Vandegrift v. Wilkins (In re Wilkins)*, Ch. 7 Case No. 99-12592-MAM, Adv. No. 99-1258, slip op. at 20 ( S.D. Ala. April 5, 2002) (citing *Freeman v. Frick (In re Frick)*, 207 B.R. 731, 734 (Bankr. N.D. Fla. 1997); *Jafarpour v. Shahrokhi (In re Shahrokhi)*, 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001).

The question of who is a "fiduciary" for purposes of § 523(a)(4) is one of federal law. *Id.* A fiduciary under § 523(a)(4) is more narrow than a "fiduciary" under a general common law definition; the fiduciary relationship must arise under an express or technical trust. *Quaif v. Johnson*, 4 F.3d 950, 952-55 (11th Cir. 1993). The burden is on the plaintiff to show the existence of an "express trust." *Wilkins*, slip op. at 11 (citing *Wright v. Gulf Insurance Co. (In re Wright)*, 266 B.R. 848, 851 (Bankr. E.D. Ark. 2001). Whether an express trust exists must be determined by reference to Alabama law. *Id.* The elements of an express trust are: "(1) a declaration of trust, (2) a clearly defined trust res, and (3) an intent to create a trust relationship." *Council 49, American Federation of State, County & Municipal Employees v. Boshell (In re Boshell)*, 108 B.R. 780, 783 (Bankr. N.D. Ala. 1989). The law is well established that "debtor-creditor relationships are not covered by Section 523(a)(4)." *Frick*, 207 B.R. at 737 (citations omitted).

Blackburn provided no proof of an "express trust" relationship. The assurance by Stokes that she would pay Blackburn when she received the insurance check did not create an express trust between the two and there was no evidence of any intention to create a trust relationship.

-10-

Consequently, Blackburn's § 523(a)(4) fiduciary fraud claim must fail.[3]

*523(a)(6)*

Blackburn's final contention is that the $5,750 debt is nondischargeable under § 523(a)(6) because it is the result of a "willful and malicious injury by the debtor." For purposes of § 523(a)(6), willful requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct 974, 140 L. Ed. 2d 90 (1998). There must be an actual intent to cause injury. *Id.* The definition of malicious in § 523(a)(6) was not addressed by the Supreme Court in *Geiger*, but the Eleventh Circuit has defined malicious to mean "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995). Given the definitions of "willful" and "malicious," a § 523(a)(6) case is difficult to prove.

The evidence, or lack of evidence, presented by Blackburn does not meet the above definitions of "willful and malicious injury." There was no evidence that Stokes actually intended to injure Blackburn. The school's nonpayment of Blackburn may have occurred for many reasons, including lack of funds. Without more specific proof of targeted wrongful reasons for nonpayment, Blackburn cannot meet her burden of proof. While Stokes may have acted negligently or recklessly, the Supreme Court in *Geiger* made it clear that negligence and recklessness are not enough to invoke § 523(a)(6). *Geiger*, 523 U.S. at 64. It is well settled law

---

[3] Because there is no fiduciary relationship, the court does not need to decide whether there has been a "defalcation." Additionally, there was no evidence submitted by plaintiff of any embezzlement or larceny by Stokes.

-11-

that breach of agreement does not constitute proof of nondischargeability under § 523(a)(6). *Wilkins*, slip op. at 13 (citing *Cadillac Vending Co. v. Haynes (In re Haynes)*, 19 B.R. 849, 851 (Bankr. E.D. Mich. 1982); *Geiger*, 523 U.S. at 62).

Based on the evidence presented, the court must conclude that Blackburn's claims against Stokes are dischargeable in bankruptcy as to Stokes individually. This decision does not preclude Blackburn from pursuing any claims she may have against Alpha & Omega Christian School, Inc. or Hartford Insurance Company.

THEREFORE IT IS ORDERED:

1. Deborah Stokes' motion to dismiss made at the close of plaintiff's case-in-chief and treated by the court as a motion for judgment on partial findings is GRANTED. This order shall constitute the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(c).

2. Plaintiff Robin Blackburn's § 523(a)(2), (4), and (6) claims against Deborah Stokes are DISMISSED WITH PREJUDICE with each party to bear their own costs.

3. The plaintiff's claim against Deborah Stokes is DISCHARGEABLE in Stokes bankruptcy as to Stokes individually.

Dated: June 8, 2006

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE

Case 05-16264    Doc 17    Filed 08/11/06    Entered 08/11/06 15:37:17    Desc Main
Document      Page 12 of 12